

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ELVIRA GARZA, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-CV-152-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Elvira Garza ("Garza") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act ("SSA"). In September 2006, Garza applied for disability insurance benefits alleging that she became disabled on February 26, 2002.[1] (Transcript ("Tr.") 14, 16, 82-86.) Her applications were denied initially and on reconsideration. (Tr. 14, 56-59, 62-67.) The

---

[1] Garza's insured status for disability insurance benefits expired on March 31, 2006. (Tr. 16.)

1

ALJ held a hearing on September 29, 2008 and issued a decision on December 3, 2008 that Garza was not disabled. (Tr. 14, 11-22.) Garza filed a written request for review, and the Appeals Council denied her request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4-7.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions govern disability insurance. *See* 20 C.F.R. Pt. 404 (disability insurance). The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work,

2

considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III. ISSUES

1. Whether the ALJ applied the correct legal standard in weighing the treating source opinion;

2. Whether the ALJ improperly evaluated Garza's credibility; and

3. Whether the ALJ improperly relied on testimony from the vocational expert.

3

## IV. ADMINISTRATIVE RECORD

### A. ALJ Decision

The ALJ, in his December 3, 2008 decision, noted that Garza last met the disability insured status requirements under Title II of the SSA on March 31, 2006, the date she was last insured for disability insurance benefits under Title II. (Tr. 16.) He stated that Garza had not engaged in any substantial gainful activity since February 26, 2002, her alleged onset date of disability. (*Id.*) He further found that Garza had the following severe impairments: "[h]istory of iron deficiency anemia, mild cervical degenerative disc disease, lumbar degenerative disc disease status-post surgery, history of coronary artery disease, history of transcient ischemic attack (TIA), diabetes, obesity, and status-post left shoulder arthroscopic surgery." (Tr. 17.)

Next, the ALJ held that none of Garza's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 17.) As to Garza's RFC, the ALJ opined that Garza could perform sedentary work with the following restrictions:

> Not required to stoop, balance, crouch, or climb stairs and ramps more than occasionally.
>
> Not required to climb scaffolds, ladders, and ropes, crawl, or kneel.
>
> Not required to sit for more than 20 minutes without the opportunity to stand in addition to a lunch and the normal legal breaks during the work day.
>
> Not required to work above shoulder level with the upper extremities.
>
> Not required to work at unguarded heights or near unguarded hazardous mechanical equipment.
>
> Not required to be exposed to extreme temperatures and high humidity.

(Tr. 17-18.) In reaching this conclusion, the ALJ stated:

4

. . . The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

. . . .

My residual functional capacity assessment is supported by medical expert Dr. Eppstein, who testified at the hearing regarding the claimant's limitations as follows:

The claimant is limited to lifting 10 pounds; standing and walking for 4 hours; and sitting intermittently for 6 hours in an 8-hour day; with no overhead work; no work in extreme temperatures; and no climbing ropes, ladders, or scaffolds; and with a limited ability to climb stairs and ramps or stoop, bend, and crawl.

Dr. Eppstein further testified that the claimant has no hand or finger limitations.

Dr. Eppstein's testimony was based on an evaluation of a more complete case record than would normally be available to an examining or treating physician, and gave consideration to the claimant's combined impairments. Accordingly, I find that the testimony warrants substantial weight in this matter.

My finding regarding the claimant's residual functional capacity is supported by the objective medical evidence and the claimant's medical treatment history. The record reflects that in March and May 2002, the claimant was treated for anemia. In February 2002, she injured her left knee and shoulder in a work-related fall; in July 2002, she underwent successful knee arthroscopic surgery, and in January 2003, she underwent successful left shoulder surgery secondary to acromioclavicular joint arthritis.

In April 2004 and May 2005, the claimant underwent three stent placements secondary to coronary artery disease, by history. In June 2005, she was treated for transcient ischemic attack, or TIA.

The remainder of the medical evidence pertains to a period after the claimant was last injured for disability benefits. In October 2006, the claimant was cleared for lumbar surgery, but she continued to be treated conservatively. In March 2007, Dr. Patrick Kobett opined that the claimant was unable to work, but I noted that the claimant had not yet undergone back surgery, and I find that Dr.

Kobett's opinion warrants very limited probative value on that basis.[2] In August 2008, the claimant requested and underwent surgery secondary to a herniated lumbar disc.

The claimant also carries diagnoses of diabetes and mild cervical degenerative disc disease.

. . . .

The claimant did undergo surgery for her impairments, which certainly suggests the symptoms were genuine. While this weighs in the claimant's favor, it is offset by the fact that the surgeries have been generally successful in relieving her symptoms. Her anemia resolved with medication, and her diabetes is controlled with medication and diet.

. . . .

I conclude that the claimant's symptoms have no substantial affect on her ability to work beyond the functional limitations and restrictions indicated by the medical evidence. Turning to the medical evidence, I find that her exertional and nonexertional capabilities are compromised, but not to the degree alleged (*i.e.*, an inability to work in any capacity). With regard to exertional limitations, in December 2006 (and again in February 2007), state agency medical consultants determined there was insufficient evidence prior to the date the claimant was last insured for disability benefits. However, I am giving the benefit of the doubt to the claimant by assessing her residual functional capacity at the sedentary level. I have also provided nonexertional restrictions consistent with the most liberal interpretation of her impairments and symptoms, including a wide range of postural, manipulative, and environmental limitations.

(Tr. 19-20 (internal citations omitted).)

---

2 In a Multiple Impairment Questionnaire ("Questionnaire") dated March 6, 2007, Patrick Kobett, M.D. ("Kobett") indicated that he first began treating Garza on September 16, 1994. He most recently examined her on March 6, 2007, and he saw her every one to three months. (Tr. 359; *see* Tr. 359-66.) In the Questionnaire, Kobett diagnosed Garza with hypertension; coronary artery disease; TIA; neck, back and shoulder pain; hyperlipidemia; hyperglycemia; and knee pain and opined that Garza's prognosis was "fair." (Tr. 359.) He opined that she could sit and stand zero to one hours and should not sit continuously during an eight-hour day during a normal competitive five day a week environment. (Tr. 361.) Kobett further stated that Garza could occasionally lift zero to five pounds and carry zero pounds and was moderately limited in her ability to grasp, turn, and twist objects; use her fingers or hand for fine manipulations; and use her arms for reaching (including overhead). (Tr. 362-63.) He opined that Garza could not perform a full time competitive job that required activity on a sustained basis and was capable of only low stress. (Tr. 364.) He further stated that she would be limited in her ability to work at a regular job by the following: psychological limitations and the need to avoid wetness, fumes, gases, temperature extremes, humidity, and heights. (Tr. 365.) In addition, he opined that she should have no pushing, pulling, kneeling, bending, or stooping. *Id.*

The ALJ opined, based on his RFC assessment, that Garza was able to perform her past relevant work as a social welfare administrator and that Garza was able to make a successful adjustment to other work that existed in significant numbers in the national economy; thus, she was not disabled. (Tr. 20-22.)

## V. DISCUSSION

As to the issue of the evaluation of treating physician's opinion, Garza claims, in essence, that (1) the ALJ erred when he failed to give controlling weight to the opinion of Kobett, Garza's treating physician, without applying the required factors in 20 C.F.R. § 404.1527(d)(2); and (2) the ALJ had a duty to recontact Kobett to determine whether Garza's condition had changed since she had back surgery. (Pl.'s Br. at 18-21.) Defendant, on the other hand, argues that the ALJ properly considered Kobett's opinion and did consider the factors set forth in 20 C.F.R. § 404.1527(d). (Def.'s Br. at 5-8.) Defendant asserts that the ALJ properly rejected the opinion of Kobett, choosing instead to rely on the opinion of Stephen Eppstein, M.D. ("Eppstein"), the medical expert who had reviewed all of the medical records in evidence, which included the opinion of Kobett. (Def.'s Br. at 5-8.)

Controlling weight is assigned to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding

statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). *See also* 20 C.F.R. § 404.1527(e). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)." *Newton*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original). Under the statutory analysis of 20 C.F.R. § 404.1527(d), the ALJ must evaluate the following: (1) examining relationship, (2) treatment relationship, including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s), (3) supportability, (4) consistency, (5) specialization, and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d); *see also* Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[3]

---

[3] Pursuant to *Newton*, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(d) *only* if there is no other reliable medical evidence from another *treating or examining* physician that *controverts* the treating specialist. *See Newton v. Apfel*, 209 F.3d 448, 455-57 (5th Cir. 2000). An ALJ does *not* have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507-11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily

In determining that Garza had the RFC to perform sedentary work with additional limitations the ALJ reviewed the evidence in the record, including the opinions of Kobett. (Tr. 17-20.) The ALJ, however, chose to reject Kobett's opinions for the following reasons: (1) ME Eppstein's "testimony was based on an evaluation of a more complete case record than would normally be available to an examining or treating physician and gave consideration to the claimant's combined impairments" (Tr. 19); (2) Kobett's opinion that Garza was unable to work "warrants very limited probative value" because Garza "had not yet undergone back surgery" (Tr. 19); (3) Garza performs housework not requiring lifting, pushing, sweeping, mopping, and vacuuming, and uses a bicycle for exercise (Tr. 20); and (4) Garza'a surgeries have been generally successful in relieving her symptoms, her anemia resolved with medication, and her diabetes is controlled with medication and diet (Tr. 20).

Based upon the above review of the ALJ's decision to reject Kobett's opinion, it is clear that the ALJ did not follow the statutory analysis before rejecting such opinions as the ALJ did not evaluate the five specified factors set forth in 20 C.F.R. § 404.1527(d). Although the ALJ stated that he had considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527, there is no indication that the ALJ followed the required statutory analysis. (Tr. 18.) As to factors one and two, the ALJ never identified that fact the Kobett was one of Garza's treating physicians and did not analyze Kobett's treatment relationship with Garza.[4] The ALJ's only reference to Kobett directly was that he found Kobett's March 2007 opinion that Garza was

---

rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.").

[4] The Court notes that the ALJ's only reference to any "treating physician" was when he stated, "I also note that her treating facility lists her as being 'retired.'" The reference to the treating facility was to Baylor All Saints Medical Center and not to Kobett. (Tr. 629.)

9

unable to work of limited probative value. (Tr. 19.) As to factors three, four, and six, the ALJ never analyzed the consistency and supportability of Kobett's treatment records and opinions in comparison with the other medical evidence in the record. Instead, the ALJ appears to have adopted the testimony of ME Eppstein by summarily stating that it "was based on an evaluation of a more complete case record than would normally be available to an examining or treating physician."[5] (Tr. 19.) Because there is no evidence that the ALJ relied on another *treating* or *examining* physician that controverts Kobett's opinions, but instead relied on the non-examining ME's opinion, the ALJ's failure to examine the statutory factors constitutes reversible error. Consequently, the case must be remanded.

Because the Court is remanding the case so that the ALJ can properly evaluate the opinion of Kobett, the Court will not consider the remaining issues presented by Garza. The ALJ should consider such issues on remand.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings and conclusions.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate

---

[5] The fifth factor, specialization of the treating physician, is not applicable to this case because neither party alleged that Kobett was a specialist. *See, e.g., Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at *3 (N.D. Tex. Apr. 23, 2010).

Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **February 3, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 20, 2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

11